IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SPIN MASTER LTD., a Canadian corporation, and SPIN MASTER TOYS UK LIMITED, a United Kingdom corporation,<br><br>Plaintiffs,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>Defendants. | Case No. 23-cv-01506 |

**COMPLAINT**

Plaintiffs Spin Master Ltd. and Spin Master Toys UK Limited (collectively, "Spin Master" or "Plaintiffs") hereby bring the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces.

Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of Spin Master's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Spin Master substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Spin Master to combat e-commerce store operators who trade upon Spin Master's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Spin Master's federally registered trademarks (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Spin Master is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Spin Master has been and continues to be

irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiffs**

4. Plaintiff Spin Master Ltd. is a Canadian corporation with its principal place of business at 225 King Street West, Toronto, Ontario, Canada.

5. Plaintiff Spin Master Toys UK Limited is a United Kingdom corporation with an address of Secure Trust House Boston Drive, Bourne End Buckinghamshire United Kingdom.

6. Spin Master is a leading global children's entertainment company that creates, designs, manufactures and markets a diversified portfolio of innovative toys, games, products and entertainment properties. Since 2000, Spin Master has received 96 Toy Industry Association (TIA) Toy of The Year (TOTY) nominations with 28 wins across a variety of product categories. Spin Master has been recognized with 13 TOTY nominations for Innovative Toy of the Year, more than any of its competitors. Spin Master is among a limited number of companies that not only develop and produce global entertainment properties, characters and content, but also monetize that content through the creation, sale and licensing of products.

7. One of the most popular Spin Master brands is Rubik's Cube, a 3-D cube-shaped combination puzzle that consists of twisting and turning small cubes to return the 3-D cube to its original state with every side having one solid color, which comes in a variation of sizes, including Rubik's Cube 3x3, Rubik's Cube 4x4 and Rubik's Cube 5x5 ("Rubik's Cube Products").

8. On January 4, 2021, Spin Master acquired Rubik's Brand Ltd., the previous holder of the rights to the Rubik's Cube trademarks. Through this acquisition, Spin Master has gained

3

significant common law trademark and other rights in its Rubik's Cube trademarks and Rubik's Cube Products through its predecessors' use, advertising and promotion.

9. Rubik's Cube game sales have generated millions of dollars in revenue for Spin Master. Rubik's Cube has been an enormously popular and iconic game for years, driven by the game's challenging and innovative design. Among the purchasing public, genuine Rubik's Cube Products are instantly recognizable as such. The Rubik's Cube brand has been a global success that resonates with children and adults worldwide, making Rubik's Cube one of the most recognizable puzzles around the world.

10. The Rubik's Cube trademark was first used in 1980, and products have continuously been sold under the Rubik's Cube trademark and other trademarks (collectively, the "RUBIK'S CUBE Trademarks"). As a result of this long-standing use by Spin Master and its predecessor, strong common law trademark rights and goodwill have amassed in the RUBIK'S CUBE Trademarks. The RUBIK'S CUBE Trademarks are famous marks and valuable assets of Spin Master.

11. The RUBIK'S CUBE Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 1,242,974 | RUBIK'S CUBE | For: Puzzles in class 028. |
| 1,265,094 | (image of cube designs) | For: Three Dimensional Puzzles in class 028. |

4

12. The above U.S. registrations for the RUBIK'S CUBE Trademarks are valid, subsisting, in full force and effect, and incontestable pursuant to 15 U.S.C. § 1065. Incontestable status under 15 U.S.C. § 1065 provides that the registration for the RUBIK'S CUBE Trademarks are conclusive evidence of the validity of Spin Master's RUBIK'S CUBE Trademarks and of the registration of the RUBIK'S CUBE Trademarks, of Spin Master's ownership of the RUBIK'S CUBE Trademarks, and of Spin Master's exclusive right to use the RUBIK'S CUBE Trademarks in commerce. 15 U.S.C. §§ 1115(b), 1065. True and correct copies of the United States Registration Certificates for the above-listed RUBIK'S CUBE Trademarks are attached hereto as **Exhibit 1**.

13. The RUBIK'S CUBE Trademarks are distinctive when applied to Rubik's Cube Products, signifying to the purchaser that the products come from Spin Master and are manufactured to Spin Master's quality standards. Whether Spin Master manufactures the products itself or contracts with others to do so, Spin Master has ensured that products bearing the RUBIK'S CUBE Trademarks are manufactured to the highest quality standards.

14. The RUBIK'S CUBE Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. The innovative marketing and product designs of the Rubik's Cube Products have enabled the Rubik's Cube brand to achieve widespread recognition and fame. The widespread fame, outstanding reputation, and significant goodwill associated with the Rubik's Cube brand have made the RUBIK'S CUBE Trademarks valuable assets of Spin Master.

15. Spin Master has expended substantial time, money, and other resources in advertising and promoting the RUBIK'S CUBE Trademarks. In fact, Spin Master has expended millions of dollars in advertising, promoting and marketing featuring the RUBIK'S CUBE

Trademarks. Rubik's Cube Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the RUBIK'S CUBE Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Spin Master. Rubik's Cube Products have become among the most popular of their kind in the U.S. and the world. The RUBIK'S CUBE Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the RUBIK'S CUBE Trademarks is of incalculable and inestimable value to Spin Master.

16. Genuine Rubik's Cube Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Rubik's Cube brand.

17. Rubik's Cube Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois, and through the rubiks.com webstore. Sales of Rubik's Cube Products via the rubiks.com webstore are significant. The rubiks.com webstore features proprietary content, images, and designs exclusive to Spin Master.

**The Defendants**

18. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Spin Master. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

19. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Spin Master to discover Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Spin Master will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

20. The success of the Rubik's Cube brand has resulted in significant counterfeiting of the RUBIK'S CUBE Trademarks. Consequently, Spin Master has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Spin Master has identified many fully interactive, e-commerce stores offering Counterfeit Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Walmart, Wish.com, Etsy, and DHgate, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a U.S. Customs and Border Protection (CBP) report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights (IPR) violations totaling over $3.3 billion, an increase of $2.0 billion from 2020. *Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection (**Exhibit 2**). Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), 51 percent of which originated from China and Hong Kong. *Id*.

21. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to

"routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-187.

22. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold Counterfeit Products to residents of Illinois.

23. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be

8

authorized online retailers, outlet stores or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Spin Master has not licensed or authorized Defendants to use any of the RUBIK'S CUBE Trademarks, and none of the Defendants are authorized retailers of Rubik's Cube Products.

24. Many Defendants also deceive unknowing consumers by using the RUBIK'S CUBE Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Rubik's Cube Products. Other e-commerce stores operating under the Seller Aliases omit using the RUBIK'S CUBE Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Rubik's Cube Products.

25. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

26. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

27. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other seller aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated.

28. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

29. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Spin Master's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Spin Master. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

30. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Spin Master, have jointly and severally, knowingly and willfully used and continue to use the RUBIK'S CUBE Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

31. Defendants' unauthorized use of the RUBIK'S CUBE Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Spin Master.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

32. Spin Master hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

33. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered RUBIK'S CUBE Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The RUBIK'S CUBE Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Rubik's Cube Products offered, sold, or marketed under the RUBIK'S CUBE Trademarks.

34. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the RUBIK'S CUBE Trademarks without Spin Master's permission.

35. Spin Master is the exclusive owner of the RUBIK'S CUBE Trademarks. Spin Master's United States Registrations for the RUBIK'S CUBE Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Spin Master's rights in the RUBIK'S CUBE Trademarks and are willfully infringing and intentionally using counterfeit versions of the RUBIK'S CUBE Trademarks. Defendants' willful, intentional, and unauthorized use of the RUBIK'S CUBE Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

36. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

37. Spin Master has no adequate remedy at law, and if Defendants' actions are not enjoined, Spin Master will continue to suffer irreparable harm to its reputation and the goodwill of the RUBIK'S CUBE Trademarks.

38. The injuries and damages sustained by Spin Master have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

### COUNT II
### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

39. Spin Master hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

40. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Spin Master or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Spin Master.

41. By using the RUBIK'S CUBE Trademarks in connection with the Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

42. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

43. Spin Master has no adequate remedy at law and, if Defendants' actions are not enjoined, Spin Master will continue to suffer irreparable harm to its reputation and the goodwill of the Rubik's Cube brand.

## PRAYER FOR RELIEF

WHEREFORE, Spin Master prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the RUBIK'S CUBE Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Rubik's Cube Product or is not authorized by Spin Master to be sold in connection with the RUBIK'S CUBE Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Rubik's Cube Product or any other product produced by Spin Master, that is not Spin Master's or not produced under the authorization, control, or supervision of Spin Master and approved by Spin Master for sale under the RUBIK'S CUBE Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control or supervision of Spin Master, or are sponsored by, approved by, or otherwise connected with Spin Master;

    d. further infringing the RUBIK'S CUBE Trademarks and damaging Spin Master's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Spin Master, nor authorized by Spin Master to be sold or offered for sale, and which bear any of Spin Master's trademarks, including the RUBIK'S CUBE Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon Spin Master's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Walmart, Wish.com, Etsy, and DHgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the RUBIK'S CUBE Trademarks;

3) That Defendants account for and pay to Spin Master all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the RUBIK'S CUBE Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Spin Master be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the RUBIK'S CUBE Trademarks;

5) That Spin Master be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 10th day of March 2023.       Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Justin T. Joseph
Trevor C. Talhami
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jjoseph@gbc.law
ttalhami@gbc.law

*Counsel for Plaintiffs*
*Spin Master Ltd. and Spin Master Toys UK Limited*